(No. 25996.—

CHARLES G. FRANK, Trustee, Appellant, *vs.* WALTER A. SALOMON *et al.* Appellees.

*Opinion filed April 10, 1941—Rehearing denied June 4, 1941.*

440

Harry A. Biossat, for appellant.

William Friedman, (Zeamore A. Ader and Sylvia J. Zelden, of counsel,) for appellees.

Mr. Justice Smith delivered the opinion of the court:

This cause is here on leave granted to appeal from a judgment of the Appellate Court for the First District dismissing an appeal from an order of the superior court of Cook county vacating a foreclosure decree upon a petition under section 72 of the Civil Practice act. The questions presented are whether the vacating order is a final order, and whether section 72 of the Civil Practice act (Ill. Rev. Stat. 1939, chap. 110, par. 196) may be employed in chancery proceedings.

Appellant filed a complaint to foreclose a trust deed, among the makers of which were appellees' parents who were dead. The other two makers of the trust deed were

living. They, and appellees as heirs and devisees of their parents, were made parties defendant, served with process, and a default decree was entered against them on September 3, 1936. During the same month, on appellant's motion, the decree was vacated. By leave of court, the complaint was amended, adding allegations that no inventory was filed in the estate of the parents of appellees within one year from the probate thereof, but was filed in the following year, and that creditors having claims could assert them. Unknown creditors of the decedents, and other parties alleged to claim interests in the premises, were added as defendants. The additional defendants were apparently served with process. They were defaulted and a new decree was entered finding, among other things, that appellant is entitled to recover from appellees, as heirs and devisees of their deceased parents, the value of all assets received by them from the two estates for any deficiency in case the proceeds of the sale were not sufficient to pay the amount of the decree. After the sale, a deficiency decree for $1497.53 was entered on December 17, 1936, against the living makers of the bonds, with the same holding as to the liability of appellees, limiting it to personal assets received. The original decree made no finding of any liability of appellees.

On May 5, 1938, appellees filed a verified "motion in the nature of a writ of error *coram nobis*" to vacate all the proceedings subsequent to the granting of leave to amend, and asking leave to plead or answer. This puts the motion under section 72 of the Civil Practice act, *supra*. The motion sets up that all the proceedings were without notice to anyone; that appellees had no knowledge thereof until April, 1938, and that they had paid out more for the estates than they had received. The motion was denied. On appeal, the Appellate Court held that section 72 applies to chancery proceedings, reversed the order and remanded the cause, with directions to permit appellees to answer

the complaint as amended. We dismissed a petition for leave to appeal for want of a final judgment. Under the mandates, the trial court entered an order vacating the second decree and granted appellees leave to plead or answer. On a second appeal, the Appellate Court held the order appealed from was not final and dismissed the appeal. The first decision of the Appellate Court was not final and was not reviewable by this court. While the Appellate Court deemed that decision was binding upon it on the second appeal, it is not binding on this court in reviewing the latter decision. (*Stripe* v. *Yager*, 348 Ill. 362; *McLaughlin* v. *Hahn*, 333 id. 83.) Counsel for appellees confuse the character of the judgment of the Appellate Court on the first appeal with that of the subsequent order of the superior court vacating the decree of foreclosure. The Appellate Court fell into the same error. Appellant suggests, and we agree with him, that if there was no final order until the decree was vacated, when it was subsequently vacated the vacating order is a final order. (*Mitchell* v. *King*, 187 Ill. 452; *Cramer* v. *Illinois Commercial Men's Assn.* 260 id. 516; *Central Bond and Mortgage Co.* v. *Roeser*, 323 id. 90; *People* v. *Green*, 355 id. 468.) The Appellate Court was, therefore, in error in dismissing the second appeal.

This brings up for consideration the question of whether section 72 of the Civil Practice act applies to chancery proceedings. The question resolves itself into a determination of whether the Civil Practice act abolishes all distinctions between actions at law and in chancery. At common law, and in this State prior to the enactment of the Civil Practice act, a motion in the nature of a writ of error *coram nobis* could be employed only as to judgments at law. (I Bouvier, 681; *Tosetti Brewing Co.* v. *Koehler,* 200 Ill. 369.) In the *Tosetti case,* a decree was set aside on motion after the term and another decree was entered which was reversed by the Appellate Court whose judgment we af-

firmed. In that case this court said: "In an action at law the statute abolishing the writ of error *coram nobis* and substituting therefor a motion, authorizes the court to set aside a judgment at any time within five years, for an error of fact that came within the scope of the writ as it existed at common law. * * * The statutory motion does not apply to cases in chancery. * * * The proper method of impeaching and setting aside a decree after the term is to file an original bill in the nature of a bill of review, when such decree may be set aside, reversed or modified, according to the equities of the parties." We reaffirmed this holding in *Madison and Kedzie State Bank* v. *Cicero-Chicago Corrugating Co.* 351 Ill. 180, *Wilson* v. *Fisher,* 369 id. 538, and *Harris* v. *Chicago House Wrecking Co.* 314 id. 500. In *Jacobson* v. *Ashkinaze,* 337 Ill. 141, we held the essentials of the proceeding under the statute are the same as they were at common law.

The title of the Civil Practice act: "An Act in relation to practice and procedure in the courts of this State," shows a clear legislative intention to affect only the adjective as distinguished from the substantive law. The material part of section 1 reads: "The provisions of this act shall apply to all civil proceedings, both at law and in equity, unless their application is otherwise herein expressly limited. * * * As to all matters not regulated by statute or rule of court, the practice at common law and in equity shall prevail." Section 31 provides: "Neither the names heretofore used to distinguish the different ordinary actions at law, nor any formal requisites heretofore appertaining to the manner of pleading in such actions respectively, shall hereafter be deemed necessary or appropriate, and there shall be no distinctions respecting the manner of pleading between such actions at law and suits in equity, other than those specified in this act and the rules adopted pursuant thereto; but this section shall not be deemed to affect in any way the substantial averments of fact nec-

essary to state any cause of action either at law or in equity." Section 44 (1) provides that subject to rules plaintiffs may join "any causes of action, whether legal or equitable or both." The second paragraph of that section provides that "any cause of action or counter-claim may be transferred at any time, by order of the court, from the law docket to the equity docket, or *vice versa,* as convenience and the nature of such action or counter-claim may require, and when so transferred shall proceed as though commenced on the proper side of the court; and any issue may at any time, by order of the court, be transferred for trial to the proper side of the court." These provisions demonstrate it was not the legislative intent to abolish substantive distinctions. Considering together all the provisions quoted, it was the obvious intention to do away with forms of pleading but to preserve separate procedure in law and equity. The provisions of section 44 clarify the general provisions of sections 1 and 31 in this respect. Presumably the legislature knew that the constitutional requirement of trial by jury in actions at law necessitates a distinction between legal and equitable proceedings, and we may assume that fact was taken into consideration when the statute was enacted. Sections 61, 63, 68 (3) and 69 of the act severally refer to actions at law and in chancery.

Rules 9, 10, 11 and 12 of this court (370 Ill. 18, 19) require that the pleadings shall contain in the caption and on the back the words "at law" or "in chancery." They preserve the equitable character of all matters within the jurisdiction of a court of equity prior to the effective date of the Civil Practice act, and otherwise demonstrate that the substantive distinction between actions at law and in chancery is not abolished.

Section 72 of the Civil Practice act is identical with section 89 of the Practice act of 1907, which, in turn, except the omission of two words—*"feme covert,"* is the

counterpart of section 66 of the Practice act of 1874. It provides: "The writ of error *coram nobis* is hereby abolished, and all errors in fact, committed in the proceedings of any court of record, and which, by the common law, could have been corrected by said writ, may be corrected by the court in which the error was committed, upon motion in writing, made at any time within five years after the rendition of final judgment in the case, upon reasonable notice. When the person entitled to make such motion shall be an infant, *non compos mentis* or under duress, at the time of passing judgment, the time of such disability shall be excluded from the computation of said five years." It is to be noticed that this section applies only to errors of fact which, by the common. law, could be corrected by the writ. Such errors were confined to errors in actions at law. That the legislature recognized this is evident from the fact that the section mentions only "judgments" and makes no provision as to orders or decrees.

Section 3 of "An act in relation to final judgments, decrees and orders of courts of record in criminal and civil proceedings and the power to modify, vacate or set aside the same" (Ill. Rev. Stat. 1939, chap. 77, par. 84) was enacted at the same session of the General Assembly as the Civil Practice act and they are in *pari materia*. This act provides: "Any such judgment, decree or order may hereafter be modified, set aside or vacated after the expiration of such thirty days in the same cases, to the same extent and by the same modes of proceeding as, under the law heretofore in force, it might have been modified, set aside or vacated after the expiration of the term of court at which it was rendered." It is noticeable that this section limits such proceedings to the same extent and mode as permitted by the law theretofore in force.

Statutes in *pari materia* are to be construed together. (*People* v. *Wallace,* 291 Ill. 465; *People* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 306 id. 459.)

The provisions of section 72 of the Civil Practice act and of section 3 of the Judgments act are specific in their application to the question in issue. The well-settled rule of statutory construction is that where there is found in a statute a particular enactment, it is held to be operative as against the general provisions on the subject either in the same act or in the general laws relating thereto. (*Robbins* v. *Comrs. of Lincoln Park,* 332 Ill. 571; *Handtoffski* v. *Chicago Consolidated Traction Co.* 274 id. 282.) Where, as here, the legislature reenacts a former statute, the effect of which has been judicially construed, it is presumed to have been reenacted in view of such construction. (*People* v. *Illinois Central Railroad Co.* 337 Ill. 276; *Spiehs* v. *Insull,* 278 id. 184.) Our conclusion is that section 72 of the Civil Practice act is not applicable to chancery proceedings. The remedy of appellants by bill of review is pointed out in the *Tosetti case* and in *Wilson* v. *Fisher, supra.*

The judgment of the Appellate Court dismissing the appeal and the order of the superior court setting aside the decree on appellees' motion are reversed and the cause is remanded to the superior court, with directions to deny the motion.

*Judgment of Appellate Court reversed.*
*Order of superior court reversed and*
*cause remanded, with directions.*